# STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| Vermont Unit | Docket No. 13EC00925 |

| | |
|---|---|
| Natural Resource Board Enf., <br>     Petitioner <br><br> v. <br><br> Harrison Concrete, <br>     Respondent | ENTRY ORDER |

Before the Court is the Natural Resources Board's civil citation 13EC00925 against Harrison Concrete (Respondent). The Natural Resource Board (NRB) cited Respondent for de minimis violations of Act 250 Land Use Permit (LUP) 6F0533-2, Condition 10, by "operating and cleaning mixer trucks and other construction vehicles on the premises outside of permitted hours of operation" between April 30, 2013 and September 14, 2013.

The Court held a hearing on March 10, 2014 at the Environmental Division in Berlin, Vermont. As specifically set forth below, the NRB offered witness testimony and exhibits in support of the citation. The NRB asserts that Respondent violated Condition 10 between April 30 and September 14, 2013 by having employee vehicles enter and exit the site after 6:00 p.m. on weekdays, concrete trucks and form trucks return to the site after 6:00 p.m. on weekdays and 12:00 noon on Saturdays, and "activities" conducted on the site after 6:00 p.m. on weekdays.

Aaron Brondyke, the NRB's Permit Compliance Specialist, issued citation 13EC00925. Mr. Brondyke testified that he received neighbors' complaints regarding the alleged violations. Mr. Brondyke described the complaints as relating to noise and traffic impacts, including engines running, back-up alarms, metal on metal banging, and the opening and closing of the electronic entrance gate for the concrete plant.[1] Mr. Brondyke has never visited the site or personally observed any alleged violations. Mr. Brondyke did not speak with a representative of the Respondent as part of his investigation of the alleged violations.[2] Mr. Brondyke's issuance of the citation was based upon what he described as compelling complaints from Respondent's neighbors. On cross-examination, Mr. Brondyke stated that the site does not have to be completely "dormant" from 6:00 p.m. to 6:00 a.m. Monday through Friday, and 12:00 noon Saturday through Monday at 6:00 a.m.

---

[1] The plant entrance has a motorized gate which is controlled by a key pad.
[2] Even considering NRB's limited resources, we are concerned with the NRB pursuing formal enforcement actions without staff conducting more complete investigations including a site visit and at least an attempt to interview a respondent.

Laura Dattilio lives at 1509 Skunk Hill Road, approximately one-quarter of a mile from the entrance to Respondent's concrete plant. Ms. Dattilio's house and property is less than one-quarter of a mile away from Respondent's property and operations. Ms. Dattilio testified that during operating hours she can see some site activities. She also testified that she can hear noises from Respondent's property after 6:00 p.m., however, she cannot see any activities and does not know the source of the noise. Ms. Dattilio does see Respondent's concrete and form trucks returning to the site after 6:00 p.m.

Alba Boutin lives on Skunk Hill Road more than one-quarter of a mile from the entrance to Respondent's concrete plant. Ms. Boutin has heard a banging noise from Respondent's plant after 6:00 p.m. and has observed Respondent's concrete trucks on nearby roads after 6:00 p.m.

Sandy Read lives at 1722 Skunk Hill Road, directly across from Respondent's concrete plant. Ms. Read provided a written log of vehicles leaving and arriving at the site after 6:00 p.m. on weekdays and after 12:00 noon on Saturdays. Ms. Read's log describes employee vehicles leaving the site after hours and concrete and form trucks returning to the site after hours. One entry, dated June 27, 2013, describes a cement truck leaving the plant at 6:39 p.m. Ms. Read testified that on May 7, 2013, at approximately 10:15 p.m., a big truck arrived at the concrete plant and made lots of noise. She went outside and specifically saw that the noise was coming from activities at Harrison Concrete.

James Harrison is the owner of Respondent. Mr. Harrison provided an overview of site operations. He specifically described the cleaning of concrete trucks by filling a truck's cement drum with about 100 gallons of water and turning the drum with the truck's engine at one-half idle. This creates liquid slurry which is then emptied from the drum. The plant's concrete product does not contain stone. Mr. Harrison testified that he thinks trucks are washed after 6:00 p.m., however, there was no evidence of such an event during the citation period. Mr. Harrison summarized concrete truck activity at the end of a day as including driving off-site to be fueled for the next day, on-site cleaning as described above, and the driver completing a Commercial Driver's License (CDL) log. Mr. Harrison testified as to the May 7 10:15 p.m. truck activity described by Ms. Read. Mr. Harrison stated that his company had ordered a large screen (a piece of equipment used at quarries) from overseas which arrived in Vermont at the late hour. Mr. Harrison accepted the delivery at the subject site and then shipped it off-site the next morning.

<u>Findings of Fact</u>

Based upon the parties' evidence, we make the following findings of fact:

1. Respondent's original Act 250 Land Use Permit (LUP) 6F0533, issued on May 8, 2001, authorizes the construction of an 8,400 square foot storage/precast concrete building and a 1,200 square foot office building with water and wastewater systems at the subject site.

2. On April 17, 2003, Respondent received LUP 6F0533-2, amending LUP 6F0533 and authorizing the construction of a concrete batching plant, equipment storage, water storage tanks, sedimentation house, aggregate bunker storage, access drive, and truck parking area at the subject site.

3.    Condition 10 of LUP 6F0533-2 states: "Operation of the facility shall be restricted to the hours of 6:00 AM to 6:00 PM, Monday thru Friday, 6:00 AM to noon on Saturdays."

4.    Employee vehicles routinely leave the site after 6:00 p.m. weekdays and 12:00 noon Saturdays.

5.    Concrete and form trucks routinely return to and enter the site after 6:00 p.m. weekdays and 12:00 noon Saturdays.

6.    On June 27, 2013, a cement truck exited the plant at 6:39 p.m.  There is no evidence of whether this truck was carrying a load of concrete or, if it was, when it was loaded.

7.    While concrete trucks are likely cleaned on-site after 6:00 p.m. weekdays or 12:00 noon Saturdays, there is no evidence of a specific event taking place during the citation period.

8.    Neighbors heard noise from the site after 6:00 p.m. on weekdays or 12:00 noon Saturdays during the citation period.  The source of the noise and the activity causing the noise is unknown except for a single event on May 7, 2013 which related to an equipment delivery.

## Conclusions of Law

The NRB carries the burden of proving the alleged violation(s) by a preponderance of the evidence; in other words, for each violation, the NRB must prove that the violation is more likely to have occurred than not.  See 16-3 Vt. Code R. 600:25-9(a) (2013) (allowing a respondent to request a hearing pursuant to 10 V.S.A. § 8012); 10 V.S.A. § 8013(a) (establishing burden of proof for hearings requested under 10 V.S.A. § 8012); see In re M.L., 2010 VT 5, ¶ 26, 187 Vt. 291 (noting that "preponderance" means that upon all the evidence the facts asserted are more probably true than false).  If the NRB fails to meet its burden of proof, then we must reverse the citation.  10 V.S.A. § 8012(b)(1).

We must therefore determine whether it is more likely than not that Respondent has "operated" the facility outside of the hours of 6:00 a.m. to 6:00 p.m. Monday through Friday and 6:00 a.m. to 12:00 noon on Saturdays.  The NRB suggests that because the neighbors have heard noise from the subject site outside of these hours, the Court should infer that the facility has operated outside of the restricted hours.  We decline to so conclude, because the evidence presented does not demonstrate that this inference is more probably true than not.  The NRB's Permit Compliance Specialist provided credible testimony that the site need not be completely "dormant" outside of the restricted hours of operation.  Based upon the above findings, we have no evidence of specific on-site activities outside of the permitted facility operation hours during the citation period.  Because the noises heard after hours may come from activities other than "operation of the facility," such as the one-time after hours delivery of a piece of equipment, we must conclude that the NRB has failed to prove a violation by a preponderance of the evidence.  We decline to provide an opinion as to whether certain activities, such as

3

cleaning a concrete truck, would constitute a violation of Condition 10 if conducted outside of the restricted hours.[3]

The NRB also asserts that employees leaving the site and concrete trucks and form trucks returning to the site after the restricted hours constitute violations. We disagree. In construing Condition 10, we employ "normal statutory construction techniques" and aim to "implement the intent of the draftspersons." Sec'y, Vt. Agency of Natural Res. v. Handy Family Enters., 163 Vt. 476, 481 (1995). We will construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the permit. Id.; In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. Where the plain meaning is clear, it will be enforced and no further interpretation is necessary. Vt. Alliance of Nonprofit Orgs. v. City of Burlington, 2004 VT 57, ¶ 6, 177 Vt. 47. Where the permit is silent or uncertain as to the regulation of specific activities, we interpret its provisions in favor of the landowner. Handy Family Enters., 163 Vt. at 481–82. To be enforceable, a permit condition "must be expressed with sufficient clarity to give notice of the limitations on the use of the land." Id. at 482 (quoting In re Farrell & Desautels, Inc., 135 Vt. 614, 617 (1978)).

While the NRB offered into evidence Respondent's Act 250 applications and the two LUPs at issue, there are no District Commission findings of fact or conclusions of law in evidence.[4] Neither the LUPs nor Respondent's applications directly address whether employee vehicles or concrete and form trucks entering or exiting the site are subject to the restricted hours of facility operations. We conclude that employee vehicles must be allowed to exit the site outside of the permitted hours of facility operation. Otherwise, Respondent would be unable to operate the facility until the end of the permitted operating hours. Reading such a prohibition into Condition 10 would lead to irrational results. See Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 14, 177 Vt. 287 ("[W]e favor interpretations of statutes that further fair, rational consequences, and we presume that the Legislature does not intend an interpretation that would lead to absurd or irrational consequences.") (internal quotation omitted); In re Stowe Club Highlands, 164 Vt. 272, 280–81 (1995) (refusing to interpret regulation such that it leads to irrational results).

We also conclude that Condition 10, which restricts operation of the facility, does not give notice that the restricted hours also apply to concrete and form truck traffic which may be required to transport product completed by closing time or to travel a considerable distance to return to the site for nightly storage. Thus, we conclude that Condition 10 does not govern employee traffic or concrete and form trucks entering or exiting the site.

---

[3] We note that Respondent represented that it intends to file an amendment application seeking clarity of what activities are subject to the restricted hours. We appreciate this effort, as the Court considers the permit application and review process a more appropriate venue for such interpretive efforts than a limited enforcement action.

[4] LUP 6F0533-2 was issued pursuant to the Act 250 minor permit amendment process, which does not generate findings of fact and conclusion of law.

As we conclude that the NRB has failed to prove the cited violation(s) by a preponderance of the evidence, we **VOID** and **REVERSE** the citation.

This completes the current proceedings before this Court.

Done at Burlington, Vermont, this 19th day of March, 2014.

_____

Thomas G. Walsh, Environmental Judge